

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-15-2005

# USA v. Dowdy

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2421

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Dowdy" (2005). *2005 Decisions.* Paper 545.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/545

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 04-2421

UNITED STATES OF AMERICA

v.

KEVIN DOWDY,

Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court Crim. No.: 3-CR-01-0401-02
District Judge: The Honorable Edwin M. Kosik

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 15, 2005

Before: SLOVITER, BARRY, and SMITH, *Circuit Judges*

(Filed:    September 15, 2005)

OPINION

SMITH, *Circuit Judge*.

Kevin Dowdy was convicted of distribution and possession with the intent to

distribute 50 grams or more of crack cocaine, and of conspiring to do the same. On May

20, 2004, Dowdy was sentenced under a mandatory United States Sentencing Guidelines

1

regime to 324 months' imprisonment. In addition to challenging his sentence, Dowdy raises eight issues he contends warrant a new trial.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231; this Court's jurisdiction is under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. We will uphold Dowdy's conviction, but will vacate the sentence and remand the case for resentencing in accordance with *United States v. Booker*, 543 U.S. __, 125 S.Ct. 738 (2005). *See United States v. Davis*, 407 F.3d 162, 164-65 (3d Cir. 2005) (en banc).

*Sufficiency of the Evidence*

Dowdy's conviction-related issues are repetitive and meritless.[1] Dowdy spins one sufficiency-of-the-evidence issue into four issues. Specifically, Dowdy contends that (1) the evidence presented by the Government was insufficient to sustain the conviction; (2)

---

[1] Two of Dowdy's claims on appeal deserve no more than summary treatment. Dowdy contends that the District Court erred by refusing to hold an evidentiary hearing on Dowdy's farfetched allegation that his ex-lover, Dawn Phillips, blackmailed Dowdy into selling crack by threatening to interfere with Dowdy's relationship with Melissa Martin if he did not. Next, Dowdy cites the inapposite *United States v. Cross*, 308 F.3d 308 (3d Cir. 2002), for the proposition that this Court should be on the lookout for winning appellate arguments made by his co-defendants, and that such arguments should "spill over" to his benefit. Dowdy's argument might be applicable in co-defendant cases at the trial level, where the district judge is intimately familiar with the factual overlap of the cases. When appropriate, a district court can allow defendants to incorporate by reference the arguments of their co-defendants. In non-consolidated appeals, however, each appellant is on their own, and issues not raised in one's opening brief are deemed to be waived. *Laborers' Int'l Union v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue . . . will not suffice to bring that issue before this court"); *See* FED. R. APP. PROC. 28(a)(5), (9) (stating that the appellant's brief must contain a statement of issues presented for review and arguments with authorities and record citations). To be sure, courts strive for consistency in applying the law, but other mechanisms of appellate courts – adherence to precedent, multi-member panels, rehearing procedures, etc. – and not Dowdy's proposed "as-to-one, so-to-all spillover rule" are designed for that job.

the jury verdict was against the weight of evidence; (3) the chain of evidence was insufficient because it was physically and logically impossible; and (4) the physically impossible evidence compelled Dowdy to disclose to the jury that he was being detained, prejudicing his constitutional right to a presumption of innocence.

To discredit what the jury found to be sufficient evidence, Dowdy attempts to undermine the facts developed at trial. For example, Dowdy contends that, contrary to their testimony, the police could not have found drugs in Dowdy's right front pants pocket because the pants he was wearing at the time of his arrest had a single front pocket on the left. In a similar vein, Dowdy argues that it was "physically incredible" and perhaps even impossible that an associate of his could carry a one-ounce bar of crack in each of her brassiere cups, as she testified she did on drug runs with Dowdy. Dowdy also questions the reliability of the testimony from Detective Hazen that she purchased crack from Dowdy in controlled buys with marked money because the money was never recovered.

Drawing all reasonable inferences from the evidence and showing deference to the jury's verdict, as we must, *United States v. Anderskow*, 88 F.3d 245, 251 (3d Cir. 1996), means here that we will not indulge Dowdy's attempt to leverage minor inconsistencies and allegedly "impossible" or "incredible" facts to impugn the jury's deliberations or abrogate their verdict.

*Separate Conspiracies Theory*

3

Dowdy argues that the District Court improperly allowed the Government to present evidence of two separate conspiracies covering different time periods. Specifically, Dowdy alleges that two months separated the conspiracies and that there was no single conspiracy encompassing the entire time frame as alleged by the Government. Consequently, Dowdy asserts that he was entitled to a jury instruction on his "separate conspiracies" theory.

Dowdy admits that the Government presented evidence that he was involved in conspiracies spanning March 2001 to December 2001; he merely asserts that the Government did not show illegal activity in June 2001 or July 2001, and thus there was a break which created two separate conspiracies. Dowdy only names, but does not cite, cases for the general proposition that the District Court "should not have considered any evidence on both conspiracies." Dowdy fails to explain how he was prejudiced by the District Court's refusal to entertain his theory of the case, except to argue that a variance between the indictment and the Government's evidence would have been created had the jury found separate conspiracies. Dowdy attempts to manufacture this variance by contending that the competing theories of the case – the Government's single conspiracy theory and Dowdy's separate conspiracies theory – should have been placed before the jury in the instructions.

We believe the District Court was well within its discretion in refusing Dowdy's preferred jury instruction. The two-month evidentiary gap highlighted by Dowdy is not

4

cause for assigning error to the District Court on account of this aspect of the jury instructions. The District Court limited the conspiracy count put to the jury to three members – Dowdy, Jones, and Young – because the main Government witness on this count could not positively identify the fourth accused member in court. Also, the evidence was clearly sufficient to establish the elements of a narcotics conspiracy, and included multiple factual links among the three co-conspirators. In short, the District Court properly tailored the jury charge to the evidence presented, and Dowdy was not entitled to his proposed instruction, which was cribbed from the Ninth Circuit Model Criminal Jury Instructions, was ill-fitting for the facts of the case, and may have confused the jury.

*Motion to Suppress*

Dowdy next argues that the search warrant was improperly issued, and, consequently, his motion to suppress the evidence found in the search of the Snow Ridge Village apartment he shared with Melissa Martin should have been granted and the contraband evidence excluded. Our review of the supporting affidavit convinces us that it provided an ample basis for the magistrate's conclusion that probable cause existed for the issuance of the warrant.[2] The correctness of the magistrate's determination is so readily apparent that the search need not seek the refuge of *United States v. Leon*, 468

---

[2] Though on our reading of the affidavit we could readily reach the same conclusion as the magistrate, our conclusion is sealed by the substantial deference we give to the magistrate's probable cause determination. *Illinois v. Gates*, 462 U.S. 213, 236 (1983).

5

U.S. 897 (1984), in order to be deemed constitutional. The affidavit recounts several controlled transactions of crack from Dowdy and Martin in which the drugs were exchanged for marked currency. Following each transaction, the narcotics seller was followed by a surveillance officer back to the Snow Village apartment shared by Dowdy and Martin. Further, the affidavit noted that Dowdy was implicated by a confidential informant as being a member of a narcotics distribution organization from which 41 controlled buys were made and which was responsible for an estimated sales volume of 1500 rocks of crack per week in Monroe County, and that Dowdy had personally sold crack to undercover officers on multiple occasions in the previous forty-eight hours. In short, the affidavit contained sufficient information for the magistrate to conclude that crack cocaine, marked currency, or both, probably would be found in Dowdy and Martin's Snow Village apartment.

*Sentencing Issues*

The District Court sentenced Dowdy on May 20, 2004, seven months before the Supreme Court issued its *Booker* opinion. The District Court based its computation of Dowdy's Guidelines range in part on the Government's position that Dowdy was involved in distributing between 500 grams and 1.5 kilograms of crack cocaine, that he managed a narcotics distribution organization, and that he possessed a firearm in connection with the drug offenses. None of these determinations were ever put to the jury.

6

In light of the Supreme Court's subsequent *Booker* opinion, we believe this and the other sentencing issues raised by Dowdy are best determined by the District Court in the first instance, and we will vacate the sentence and remand for resentencing in accordance with intervening precedent.